```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL HERNANDEZ,

                Plaintiff,
                                        MEMORANDUM & ORDER
        -against-                       12-CV-0789 (JS)(SIL)

HAMPTON BAYS UNION FREE SCHOOL
DISTRICT and ALYSON SABOE,

                Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Joseph C. Stroble, Esq.
                    40 Main Street
                    Sayville, NY 11782

For Defendants:     Kelly Courtney Spina, Esq.
                    Maurizio Savoiardo, Esq.
                    Michael Anthony Miranda, Esq.
                    Miranda Sambursky Slone Sklarin
                       Verveniotis LLP
                    240 Mineola Boulevard
                    Mineola, NY 11501
```

SEYBERT, District Judge:

Plaintiff Michael Hernandez ("Plaintiff") commenced this action against defendants Hampton Bays Union Free School District (the "District") and Alyson Saboe ("Saboe" and together with the District, "Defendants"), alleging, inter alia, that he was unlawfully discriminated against based on his race in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 29 U.S.C. § 2000e et seq.; the New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; and the United States Constitution.[1]

Defendants move for summary judgment on all of Plaintiff's claims. (Docket Entry 37.) Plaintiff has not opposed Defendants' motion.[2] For the following reasons, Defendants' motion for summary judgment is GRANTED.

BACKGROUND

The Court must first address the effect of Plaintiff's repeated noncompliance with both Local Civil Rule 56.1 and the Court's Orders in this case before discussing the factual record and the merits of Defendants' motion.

---

[1] Plaintiff's Complaint contains a litany of causes of action, and each cause of action gives no indication as to its governing law. The Court reads the Complaint as attempting to state the following causes of action: (1) unlawful discrimination based upon Plaintiff's race, national origin, and status as a convict pursuant to Title VII, the NYSHRL, and the United States Constitution; (2) hostile work environment in violation of Title VII and the NYSHRL; (3) retaliation and wrongful discharge in violation of Title VII and the NYSHRL; (4) negligent hiring; (5) intentional infliction of emotional distress; and (6) prima facie tort. In a letter to the Court dated May 1, 2014, however, Plaintiff states, "Plaintiff limits his claims to discrimination based on race. All other claims are discontinued, at this time [sic]." (Pl's Ltr. of May 1, 2014, Docket Entry 33, at 1.) Accordingly, those claims not specifically addressed in this Memorandum and Order are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 41.

[2] On June 5, 2014, Plaintiff electronically filed a document and entitled it "Response in Opposition re Motion for Summary Judgment." (Docket Entry 38.) Oddly, though, the document filed was not a response, but instead a copy of Defendants' own Rule 56.1 Statement.

I.   Procedural Defects

The Local Civil Rules regarding summary judgment should be well known to attorneys litigating in this Court. Under Local Civil Rule 56.1, a party moving for summary judgment must file "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." LOCAL CIV. R. 56.1(a). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).

The party opposing summary judgment, in turn, must file "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." LOCAL CIV. R. 56.1(b). If the party opposing summary judgment denies any of the facts in the movant's 56.1 statement, the opposing party must "support its position by citing to admissible evidence in the record." Baity v. Kralik, --- F. Supp. 3d ----, 2014 WL 5010513, at *1 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); see LOCAL CIV. R. 56.1(d)

("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), <u>including each statement controverting any statement of material fact</u>, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." (emphasis added)). Responses that "do not point to any evidence in the record that may create a genuine issue of material fact[ ] do not function as denials, and will be deemed admissions of the stated fact." <u>Risco v. McHugh</u>, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); <u>see</u> LOCAL CIV. R. 56.1(c).

Plaintiff's counsel has repeatedly failed to comply with Local Rule 56.1. Counsel first filed his 56.1 Counterstatement that lodged a general denial of the entirety of Defendants' 56.1 Counterstatement and rehashed the allegations of the Complaint in narrative form without any citations. (<u>See</u> Letter Rule 56.1 Counterstmt., Docket Entry 28.) Thus, at a pre-motion conference on April 11, 2014, the Court granted Plaintiff two weeks to file a revised counterstatement that conformed to Local Rule 56.1. (Minute Entry for Pre-Mot. Conf., Docket Entry 31.) On May 1, 2014, nearly a full week after the expiration of the Court's deadline, Plaintiff's counsel wrote the Court attaching a revised counterstatement that again lacked any citations to record evidence. (Pl.'s Ltr. of May 1, 2104.) By Electronic Order dated May 2, 2014, the Court indicated that

4

it would not accept the revised counterstatement because it again did not comply with Local Rule 56.1. After an unsuccessful motion for yet another extension of time to file a proper counterstatement, Plaintiff again, without leave of Court, submitted a third counterstatement. (Pl.'s Second Revised 56.1 Stmt., Docket Entry 36.) Again, the third submission did not comply with the appropriate rules; it again contained no citations. See LOCAL CIV. R. 56.1(d).

In light of Plaintiff's counsel's repeated failure to comply with Local Civil Rule 56.1 and the Court's Orders, the Court is sorely tempted to accept Defendants' stated facts as admissions to the extent that they are supported by admissible evidence. See, e.g., Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294, 301 n.2 (E.D.N.Y. 2013) ("To the extent that the parties have failed to cite to admissible evidence in support of factual assertions in their respective Rule 56.1 Statements and Responses, the court has disregarded such unsupported factual assertions."); Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding responses in a litigant's 56.1 counterstatement that "fail[ed] to refer to any evidence in the record to support [the litigant's] contention that certain facts are disputed"). Nonetheless, because the Court prefers to resolve cases on the merits, and because the record in this case is relatively small, the Court overlooks

5

counsel's noncompliance and conducts an independent review of the record. See Monahan v. N.Y. City Dep't of Corrs., 214 F.3d 275, 292 (2d Cir. 2000) (stating that the court may, in its discretion, "conduct an assiduous review of the record." (internal quotation marks and citations)); Lopez v. Echebia, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (excusing the defendant's failure to file a Rule 56.1 statement because "its absence [did not] create[ ] difficulty for the court").

II. Factual Background

Plaintiff was hired by the District as a part-time custodian in January 2009. (Defs.' 56.1 Stmt., Docket Entry 37-31, ¶ 16; Luce Aff., Docket Entry 37-32, ¶ 3.) Recently paroled from prison, Plaintiff had been accompanying his sister during her shifts as a custodian in the District. (Defs.' 56.1 Stmt. ¶¶ 9-11.) After shadowing her on a few occasions, Plaintiff was offered a position with the District as a part-time substitute custodian. (Defs.' 56.1 Stmt. ¶¶ 12-16.) Plaintiff worked the night shift, and was called into work when a full-time custodian was absent. (Hernandez Dep. Tr., Docket Entry 37-7, 48:16-21.)

In March of 2009, Plaintiff was reassigned from the District's Middle School to its High School. (Defs.' 56.1 Stmt. ¶ 20; Savoiardo Decl., Docket Entry 37, Ex. O.) Upon his transfer, Saboe became his immediate supervisor. (Defs.' 56.1 Stmt. ¶ 22.)

6

In the fall of 2009, a full-time custodial position became available within the District, and Plaintiff applied for that position. (Defs.' 56.1 Stmt. ¶¶ 24-25.) At the interview, Plaintiff voluntarily disclosed to the interviewers that he had been convicted of driving while intoxicated. (Hernandez Dep. Tr. at 37:6-38:9.) Nonetheless, on October 13, 2009, Plaintiff was hired as a full-time, probationary custodian. (Defs.' 56.1 Stmt. ¶ 29; Savoiardo Decl. Ex. N.)

According to Plaintiff, Saboe wanted the vacant full-time position to go to her cousin, but Plaintiff was more qualified. (Hernandez Dep. Tr. at 24:22-25:8.) As a result, when Plaintiff got the full-time job, Saboe "made [his] life miserable." (Hernandez Dep. Tr. at 25:4-8.) Plaintiff alleges that on one occasion, Saboe told him she was "going to work [his] Puerto Rican ass off all summer long." (Hernandez Dep. Tr. at 51:9-15.)

Meanwhile, in connection with the start of his full-time employment, Plaintiff was required to submit his fingerprints to the New York State Education Department's Office of School Personnel Review and Accountability ("OSPRA") so that the Department of Education could authorize Plaintiff's employment.[3] (Defs.' 56.1 Stmt. ¶ 30.) Plaintiff was

---

[3] New York's regulations state that a school district "shall not employ . . . a prospective school employee . . . unless such

7

fingerprinted before he began full-time work, but the process of obtaining the required clearance was delayed because the first set of fingerprints transmitted to OSPRA was unusable. (Hernandez Dep. Tr. at 83:14-84:4.)

On April 26, 2010, OSPRA sent Plaintiff a notice advising him of its intent to deny his clearance to work for the District. (Savoiardo Decl. Ex. P.) The notice stated that in light of his criminal history, Plaintiff would be denied clearance unless he submitted a response "with satisfactory information indicating why [he] should be cleared for employment." (Savoiardo Decl. Ex. P, at 3.) Defendants were not made aware of this letter. (Savoiardo Decl. Ex. P, at 1 ("[Y]our prospective employer will NOT receive a copy of this letter.") (capitalization in original).) In response, Plaintiff submitted three documents: (1) a Certificate of Completion from Seafield Services Outpatient Treatment that he received upon his May 2009 completion of the Alcohol and Substance Dependency Program; (2) paperwork from the Gowanda Correctional Facility indicating that Plaintiff had completed various rehabilitative programs during his incarceration; and (3) parole documentation indicating the nature of his crimes. (Hernandez Dep. Tr. at 76:20-78:20.) Unsatisfied, OSPRA wrote Plaintiff, "It would be

---

prospective school employee has been granted a clearance for employment by the department." N.Y. COMP. CODES R. & REGS. tit. 8, § 87.4.

8

helpful if you could provide . . . a persona [sic] statement explaining what was happening during the time of your convictions and what you are doing today to keep away from alcohol and drugs." (Savoiardo Decl. Ex. R.) Plaintiff did not provide OSPRA with any additional documentation. (Hernandez Dep. Tr. at 78:21-23.)

On July 6, 2010, OSPRA sent the District a letter indicating that Plaintiff's request for clearance to work in the District was denied. (Savoiardo Decl. Ex. W.) As a result, at a subsequent board meeting on August 10, 2006, Plaintiff's employment with the District was terminated. (Savoiardo Decl. Ex. BB.) Saboe played no role in the decision to terminate Plaintiff. (See Defs.' 56.1 Stmt. ¶ 73; Saboe Aff., Docket Entry 37-39, ¶ 3.)

## DISCUSSION

The Court will first discuss the burden Defendants face in establishing their entitlement to summary judgment before turning to the merits of their motion.

I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202, 211

9

(1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1611, 26 L. Ed. 2d 142, 162 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2512, 91 L. Ed. 2d at 213-14. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256, 106 S. Ct. at 2514, 91 L. Ed. 2d at 217). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41

("[U]nsupported allegations do not create a material issue of fact.").

The fact-intensive nature of discrimination cases counsels that courts considering a motion for summary judgment do so with an extra measure of caution. See, e.g., Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." McLee, 109 F.3d at 135; see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## II. Plaintiff's Title VII and NYSHRL Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Similarly, Section 296 of the NYSHRL prohibits an employer from refusing to hire or discharging an employee "because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status." N.Y. EXEC.

11

LAW § 296.1(a). The Court first discusses generally the burden-shifting framework applicable to Plaintiff's Title VII and NYSHRL claims, and then proceeds to Plaintiff's claims specifically.[4]

A. The McDonnell-Douglas Burden-Shifting Framework

The familiar McDonnell-Douglas burden-shifting framework governs Plaintiff's Title VII and NYSHRL claims. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668, 677 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004). The establishment of a prima facie case creates a rebuttable presumption of discriminatory animus that shifts the burden to the defendant to proffer a legitimate, nondiscriminatory reason for its adverse employment action. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed. 2d at 677. Once the defendant provides such a reason,

---

[4] Discrimination claims under the NYSHRL are analyzed identically and have the same outcome as their federal counterparts. See Hyek v. Field Support Servs., Inc., 461 F. App'x 59, 60 (2d Cir. 2012) ("Claims brought under the NYSHRL are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII." (ellipsis omitted) (internal quotation marks and citation omitted)); Abdu–Brisson, 239 F.3d at 466 (analyzing State Human Rights Law claim under same framework as Title VII claim at summary judgment). Accordingly, the Court will provide a singular discussion for Plaintiff's Title VII and NYSHRL claims.

12

the burden shifts back to the plaintiff to present competent evidence that the legitimate reasons offered by the defendants were not the true reasons, but were a pretext for discrimination or retaliation. Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 117 (2d Cir. 2010). With this framework in mind, the Court turns to Plaintiff's claims.

B. Prima Facie Case

To establish a prima facie case of race-based discrimination under Title VII and the NYSHRL, an employee must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010).

Here, Plaintiff cannot establish a prima facie case of discrimination because he was not qualified for the position from which he was terminated. New York State law requires all school district employees to obtain clearance for employment from the Department of Education, N.Y. COMP. CODES R. & REGS. tit. 8, § 87.4, and Plaintiff did not have such clearance. Thus, by law, Plaintiff was not qualified. See Inguanzo v. Hous. & Servs., Inc., No. 12-CV-8212, 2014 WL 4678254, at *12 (S.D.N.Y. Sept. 19, 2014) ("Because she lacked the required license, Ms. Inguanzo was not qualified for the Scatter Site position."); see

13

also Orlando v. Dep't of Transp., Comm'r, 459 F. App'x 8, 9 (2d Cir. 2012) (holding employee not qualified for promotion because he failed the promotion test); Mars v. Serv. Now for Adult Persons (S.N.A.P.), 305 F. Supp. 2d 207, 213 (E.D.N.Y. 2004) (finding plaintiff's failure to obtain the medical clearance required by the company rendered him unqualified).

Moreover, the Court finds no evidence to suggest that Plaintiff was terminated under circumstances giving rise to an inference of discrimination. An adverse action does not arise under circumstances giving rise to an inference of discrimination where "there is no evidence in the record that anyone who was responsible for [the adverse action] harbored a discriminatory motive toward the plaintiff or acted with a discriminatory intent." Mathirampuzha v. Potter, 548 F.3d 70, 79 (2d Cir. 2008); Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999) (affirming summary judgment where record was devoid of evidence showing that the individual who allegedly harbored discriminatory aniumus played any "meaningful role" in the adverse action decision). Here, the only evidence in the record relating whatsoever to Plaintiff's race is the statement of his superior, Saboe, that she was going to "work his Puerto Rican ass off." It is undisputed, however, that Saboe played no

role in the decision to terminate Plaintiff. (See Defs.' 56.1 Stmt. ¶ 73; Saboe Aff., ¶ 3.)[5]

In short, Plaintiff has failed to establish a prima facie case of discrimination under both Title VII and the NYSHRL. Plaintiff was not qualified for the position from which he was terminated because he did not possesses the clearance required by law. Nor was Plaintiff terminated under circumstances giving rise to an inference of discrimination; the lone individual who allegedly harbored discriminatory animus had no role in the decision to terminate Plaintiff.

Even if Plaintiff could demonstrate a prima facie case of discrimination, Defendants have offered a non-discriminatory reason for Plaintiff's discharge. Plaintiff was discharged because the New York State Department of Education denied him clearance to work for the District. The Court cannot find in the record even the slightest suggestion that such a reason was

---

[5] Plaintiff's claim of discrimination is further belied by his deposition testimony that suggests that Saboe may have held an animus toward Plaintiff not because of his race, but because Plaintiff received the full-time position instead of her cousin: "Alyson Saboe wanted her cousin to land the job, but she had no skills. . . . As I landed the job, she was upset that they gave me the position." (Hernandez Dep. Tr. at 24:22-25:5.) After all, "Title VII does not set forth a general civility code for the American workplace." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotations omitted).

15

pretextual.[6]  Thus, the Court finds that no reasonable juror could conclude that Plaintiff has not satisfied his burden of showing that "more likely than not discrimination was the real reason for the employment action." Weinstock, 224 F.3d at 42 (internal quotation marks and citation omitted).

III. Plaintiff's Constitutional Claims

To the extent Plaintiff alleges a cause of action under 42 U.S.C § 1983 for discrimination based upon his race in violation of the United States Constitution, that claim fails as well.  It is well settled that a "§ 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993) ("[P]laintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant.").

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket Entry 37) is GRANTED with respect to Plaintiff's claims of race-based discrimination in violation of Title VII, the NYSHRL, and the U.S. Constitution.  Plaintiff's

---

[6] Notably, the New York State Department of Education is not a defendant in this case, and its decision not to grant Plaintiff clearance is not in issue.  It is only the effect of Plaintiff's lack of clearance--the District's decision to terminate him--that Plaintiff alleges was discriminatory.

16

claims for unlawful discrimination based upon his national origin or status as a convict, hostile work environment, retaliation, wrongful discharge, negligent hiring, intentional infliction of emotional distress, and prima facie tort are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule 41. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  13 , 2015
       Central Islip, New York